WAGNER v. FRESCHL.                        { March 21, 1876.

*Partners— When bound by the fraudulent contract of a copartner.*

When one partner in a firm borrows money, representing that it is for the use of the firm, and gives a note of the firm therefor, without the knowledge of his copartners, but appropriates the money to his own use, the firm will be liable, unless the creditor knew or had reasonable ground to believe the money was not borrowed for the use of the firm, or the circumstances were such as to put him upon inquiry, and he neglected to inquire.

FROM HILLSBOROUGH CIRCUIT COURT.

ASSUMPSIT, to recover a note for $150, dated Dec. 10, 1873, on three months, and an account for money loaned amounting to $70.

Gustav Freschl, one of the defendants, was defaulted, and Joseph Freschl, the other defendant, filed an affidavit that the note was not the note of Joseph Freschl & Co.  Plea, the general issue.

The evidence tended to show that the defendants were, at and before the date of the note, partners, doing business at Manchester under the name and style of Joseph Freschl & Co.  Their business was the sale of ready-made clothing and furnishing goods; that Joseph attended to the sale of the goods, and Gustav kept the books; that at the time of

the date of the note Gustav called on the plaintiff, and informed him that the firm had some notes to pay ; that they were short, and requested a loan of $150, which the plaintiff made, and took the note in question. Gustav brought the note to the plaintiff signed, and told him that it was all right. There was no direct evidence tending to show what was done with the money, but the evidence did tend to show that the plaintiff loaned the money on the credit of the firm, and under the belief that they were liable.

The defendant introduced evidence tending to show that the money in fact did not go into the firm, and that he had no knowledge in regard to the loan until some time after the note became due ; that there was an arrangement or understanding that the partners were not to give the notes of the firm without the consent of both ; but there was no evidence that the plaintiff had any knowledge of any such agreement between them. There was evidence tending to show that the plaintiff kept a billiard saloon, and that Gustav was frequently there, and that, at the time when the firm was dissolved, in May, 1874, he was owing the plaintiff a bill for the use of his billiard tables and other things, and that since that time he had absconded. The defendant requested the court to instruct the jury " that if the money was borrowed by Gustav for his own private use, and did not go into the firm, and if Wagner knew this, or if he had reasonable ground to believe this, then Joseph is not liable ; that if, from all the facts and circumstances, the plaintiff was put upon inquiry in regard to the money for the note or the $70, and did not make the inquiry, then he cannot recover."

The court declined to give such instructions, but did instruct them, among other things, in substance, that a note made by one partner in the name of the firm will be presumed to have been made in the course of the partnership dealings, and if the other partner seeks to avoid its payment, the burden of proof lies upon him to show that it was given in a matter not relating to the partnership business, and that with the knowledge of the payee ; that if Gustav obtained the money upon the note representing the signature to be that of the firm, but misapplied the money, this would be a fraud upon Joseph which the partnership enabled him to commit, and the defendant would be liable, unless the plaintiff had notice, or knowledge, or sufficient means of knowledge, of the intended fraud ; that in general, however, a partner may transcend his authority, or violate his stipulations with his partners, is no defence for them against an innocent party.

The jury having returned a verdict for the plaintiff for the amount of the note, the defendant moved to set the same aside, and for a new trial for supposed error in the ruling of the court denying his request for instructions.

The questions of law arising upon the foregoing case were transferred to the superior court by STANLEY, J.

*Cross & Burnham,* for the defendants.

As a rule, one partner is liable for all the acts of the others, within the scope of the partnership business.

These defendants were partners in the sale of clothing. The defendants' store and the plaintiff's saloon were within a few rods of each other, on Elm street, in Manchester. The parties were all well known to each other. If Gustav had borrowed the $150 and given the firm's note, and the money had gone into the firm and been used by it, then there would be no defence. If Gustav had borrowed the money, representing that he did so for the firm, and there was nothing to throw doubt or suspicion upon the transaction to the mind of Wagner, and then afterwards Gustav had used the money for his own benefit, then there would be no defence.

To the general rule, that one partner is liable upon a note given in the name of the firm by the other, there are exceptions.

If Gustav had been indebted to Wagner for $150 for playing billiards or for lager beer, and had given the firm note without the consent of Joseph, then Joseph is not liable. We say this, not on account of the illegality of the business, for it would have been the same if the plaintiff had been in the grocery business, and had sold Gustav groceries, and he had given the firm note. A partner cannot bind the other members of the firm, without their assent, by a promissory note in the name of the firm, for his individual debt, where the payee is aware of the consideration. *Davenport* v. *Bartlett*, 3 N. H. 386.

This principle is so well understood, that cases need not be cited.

This is one of the exceptions to the general rule. Lord MANSFIELD, in 1 East 53, said,—"But there is no general rule which may not be infected by covin, or such gross negligence as may amount to covin; for covin is defined to be a contrivance between two to defraud or cheat a third." In this case, we say there was fraud on the part of the plaintiff, or such gross negligence as amounted to fraud upon Joseph.

In exact accordance with this principle, the defendant asked the court to instruct the jury that if they found that this money for the note was given for the private debt of Gustav, or money for his individual use, and if they also found that the money did not go into the firm, or if Wagner had reasonable ground to believe all this, then Joseph is not liable. The court declined to give these, or such instructions, and so there is manifest error in the ruling. The court did not give the jury to understand the exception to the general rule. The court did state the general rule; but the exceptions were not presented, and so the jury acted in their decision under the general rule, without understanding the exceptions.

It may be said that the court did speak of " notice, or knowledge, or sufficient means of knowledge, of an intended fraud." The words of the court were so connected with the general principle, that the jury did not or would not be likely to understand that there was any exception to the general rule.

As to the second instructions asked for, the court should have told the

jury that if, from all the facts and circumstances, Wagner was put upon inquiry, and then, if the jury should find from the evidence that the $150-note was for the sole use of Gustav, and that he used it, and that the money never went into the firm, and that Joseph never assented to the borrowing this money, and that Wagner did not inquire of Joseph, it would be a fraud upon Joseph, and Wagner could not hold the firm.

As to what would lead to inquiry, the rule, as given in *Great Falls Bank* v. *Farmington*, 41 N. H. 49, is well stated, " that whatever is notice enough to excite attention, and put the party upon his guard, and call for inquiry, is notice of everything to which such inquiry would naturally lead." "Where a person has sufficient evidence to lead him to a fact, he shall be deemed conversant of it."

For instance, if Wagner and Gustav were intimate friends; if Gustav were spending much of his time every day in the billiard saloon of Wagner, and neglecting his business and spending money every day in the saloon; if, also, at the same time, Wagner should know that Gustav was at the same time engaged in some speculation separate from the firm business; if, also, Wagner should know that Gustav was a fast young man, squandering his money, and that Joseph was a sober, careful, and correct business man; and if the places of business of Wagner and Joseph were within a few rods of each other; and if, from these and other facts and circumstances, suspicion and doubt were cast upon the borrowing of this money for the firm,—then we say that Wagner would be put upon inquiry; and if he did not inquire, Joseph would not be liable if it should be proved that Gustav borrowed the money and used it himself without the knowledge or consent of Joseph. This principle is recognized in *Manufacturers' Bank* v. *Winship*, 5 Pick. 14. This principle, and also the one in the first instructions asked for, are fully recognized in the instructions given in *Hayward* v. *French*, 12 Gray 457. In that case the court instructed the jury, and the full bench sustained the instructions, as follows: " The plaintiffs are entitled to recover, unless it appears that the money procured on the note was misapplied by Kilbourn to his own private purposes, and that such misapplication was known to, participated in, and connived at by the plaintiffs; that if there was such misapplication of the money, and the plaintiffs knew, or had reasonable ground to believe, that the money lent by them on the note to Kilbourn was so misapplied, they could not recover on the note." " The plaintiffs could not recover on the note in suit if they knew, or had reason to know, that the money procured on the note from the bank was misapplied by Kilbourn to his own private purposes."

*Henry S. Clark*, for the plaintiff.

The defendant, in his brief, admits that, " as a rule, one partner is liable for all the acts of the others in the scope of the partnership business." "If Gustav had borrowed the money representing that he did so for the firm, and there was nothing to throw doubt or

suspicion on the transaction to the mind of Wagner, and then afterwards Gustav had used the money for his own benefit, then there would be no defence." The case finds " there was no direct evidence tending to show what was done with the money; but the evidence did tend to show that the plaintiff loaned the money on the credit of the firm, and under the belief that they were liable." The defendant introduced evidence tending to show that the money in fact did not go into the firm, and that he had no knowledge in regard to the loan until some time after the note became due ; that there was an arrangement or understanding that the partners were not to give the notes of the firm without the consent of both; but there was no evidence that the plaintiff had any knowledge of any such agreement between them. There was evidence tending to show that the plaintiff kept a billiard saloon, and that Gustav was frequently there, and that, at the time when the firm was dissolved, in May, 1874, he was owing the plaintiff a bill for the use of his billiard-tables and other things, and that since that time he had absconded.

Condensed, the evidence of the defendant is, (1) that the money actually did not go into the firm; (2) that there was, unknown to the plaintiff, an arrangement that the partners were not to give notes of the firm without consent of both; (3) that the plaintiff kept a billiard-room, and Gustav was frequently there.

Upon this evidence the defendant requested the court to instruct the jury (1) " that if the money was borrowed by Gustav for his own private use, and did not go into the firm, and if Wagner knew this, or if he had reasonable ground to believe this, then Joseph is not liable ; " (2) " that if, from all the facts and circumstances, the plaintiff was put upon inquiry in regard to the money for the note or the $70, and did not make inquiry, then he cannot recover."

The court was right in refusing instructions asked, because (1) secret stipulations in articles of copartnership, inconsistent with the usual power of partners engaged in similar business, do not affect those dealing with a partner, on account of the firm, in ignorance of their existence. *Winship* v. *Bank of U. S.*, 9 Curtis 457. (2) Evidence that, by the articles of partnership, one partner had no right to indorse negotiable paper, is inadmissible to defeat a *bona fide* holder of such paper indorsed with the firm name, by a member of the firm, and taken by such holder for value, and without notice of the articles—*Michigan Bank* v. *Eldridge*, 9 Wall. 544 ; and the same rule must and does apply, whether the firm be maker or indorser of the paper—see *Bush* v. *Crawford*, 7 Bank. Reg. 299. How much more must the principle apply where there are no written articles of copartnership, and it is simply an agreement or understanding, verbal, among the partners. (3) The defendant bases his case on the exception of " covin, or such gross negligence as may amount to covin ; " but, stripped of the inadmissible evidence, the defence is, that the plaintiff kept a billiard-room,—an act not prohibited by the statute, and, so far as appears in the case, legalized by ch. 25, sec. 1, Revised Ordinances of City of Manchester, ed. 1870,—and that

Gustav was frequently there; and on this evidence asks the court to infer the exception proved, and instruct the jury accordingly. But fraud is never to be presumed, it must be proved—*Russell* v. *Convers,* 7 N. H. 344, *Clark* v. *White,* 12 Pet. 178, *Hagar* v. *Thompson,* 1 Bl. 80, *Garrow* v. *Davis,* 15 H. 272; and no fraud being proved, the instructions prayed for are not applicable.

The rule in *Bank* v. *Farmington,* 41 N. H. 42, as cited by the defendant, in his brief, is undoubtedly correct; but if pains had been taken to read the case, it would have been found in the very next paragraph very distinctly stated that the rule applied only to the authority of selectmen to sign the note, and whether the debt was one for which the credit of the town could properly be pledged by them. So, in this case, the plaintiff was bound to inquire whether the debt was one for which the credit of the firm could properly be pledged, and whether one of the partners of the firm was authorized to give the note of the firm for the indebtedness. This the case finds he did.

The defendant, in his brief, supposes a case; but a sufficient answer to all this is simply to call Your Honor's attention to the fact that it is not the case under consideration. The supposition might do for the jury, hardly for the court.

The defendant cites *Hayward* v. *French,* 12 Gray 457, and quotes from the instructions of the court to sustain his position; but an examination of the case will reveal that the exception to the rule was admitted,—viz., that the note in suit was given for the private debt of one of the partners. In this the exception is not proved, and the court was right in instructing the jury that the burden of proof was upon the defendant. *Chesley* v. *Chesley,* 37 N. H. 229, and cases cited.

In *Hayward* v. *French,* the defendant requested the court to instruct the jury " that if Kilbourn's transactions with the plaintiffs were wholly or mainly in his own name, for his own purposes, and the plaintiffs had no intercourse with the other partners, then if the plaintiffs lent him money in the name of the firm, taking from him in his own handwriting the firm's note, the plaintiffs were bound to see to it that the money was in fact for the use of the firm," or, in the language of the defendant in this case, " that Wagner was bound to inquire of Joseph." This instruction the court refused to give, and the court above, in its decision, said that the instructions given were sufficiently favorable to the defendant.

The court instructed the jury " that a note made by one partner in the name of the firm will be presumed to have been made in the course of the partnership dealings, and if the other partner seeks to avoid its payment, the burden of proof lies upon him to show that it was given in a matter not relating to the partnership business, and that with the knowledge of the payee."

As to the first part of the instructions, it comes within the general rule admitted by the defendant in his brief, and there can be no doubt in regard to it. The second part, as to the burden of proof, is in accordance with *Chesley* v. *Chesley,* 37 N. H. 229, and cases cited. The third

part, as to the knowledge of the payee, is in accord with the doctrine laid down in *Hayward* v. *French*, 12 Gray 457, cited by the defendant to sustain his position.

The instructions of the court covered all the points of the law in the case.

SMITH, J. The instructions requested by the defendant were well enough, so far as they went, if there were any facts appearing in evidence to which they were applicable. Nothing appears in the case to show that the plaintiff was put upon inquiry. It is expressly found that he had no knowledge of the arrangement between the defendant and his partner that neither was to give a note of the firm without the consent of the other. The case does find that, in May, 1874, Gustav was indebted to the plaintiff for the use of his billiard tables and other things; but how it was at the time the note was given, December 10, 1873, or previous, is not found, nor are any facts stated from which it can be inferred.

No exception was taken to the instructions given, and I do not see but what they cover the whole ground. *Hayward* v. *French*, 12 Gray 453. The instruction that " the defendant would be liable, unless the plaintiff had notice, or knowledge, or sufficient means of knowledge, of the intended fraud," was, in effect, the same that the defendant requested. It was, in effect, instructing the jury that if the plaintiff knew that Gustav borrowed this money for his own private use, or had such notice from all the facts and circumstances as to put him upon inquiry, he could not recover.

CUSHING, C. J. The court did instruct the jury that the defendant would be liable, unless the plaintiff had notice, or knowledge, or sufficient means of knowledge, of the intended fraud. I am unable to see any substantial difference between this charge and the instructions asked for. If the plaintiff had notice, or knowledge, or sufficient means of knowledge, I think he must have been put upon his inquiry, and I do not now see how the defendant suffered by the substitution of the charge given by the court for that requested by the counsel.

LADD, J. The difference between the instruction given and that refused in this case, seems to be more verbal than real.

If one were to go into a nice examination of the terms employed, the instruction given would seem to be as favorable, to say the least, to the defendant as that requested. It is possible to suppose that one may have the means of knowing a given fact, and still not know it, for the reason that he does not make use of the means of knowledge at his command, while one can hardly have reasonable ground to believe in the existence of a fact without both having and using some means of knowledge concerning it. But, without going into any subtleties, it seems to me the instruction given was sufficiently favorable to the defendant. It was right, and, upon the facts stated, was all that was called for by the case.

*Exceptions overruled.*